UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

KIMBERLY MANSHACK, ET AL            CIVIL ACTION NO. 13-cv-3231
                                    consolidated with 14-cv-0759

VERSUS                              JUDGE FOOTE

OCWEN LOAN SERVICING, LLC, ET AL    MAGISTRATE JUDGE HORNSBY

**MEMORANDUM RULING**

**Introduction**

Kimberly Manshack owned a home in Shreveport that was insured by American Security Insurance Company ("ASI"). The house was damaged by a fire. ASI made some payment under the policy, including a check for about $4,800 that was issued to the holder of the mortgage on the home, Ocwen Loan Servicing, LLC. The amount ASI paid was apparently not enough to make the needed repairs. Attorney Jack Bailey, who was representing Ms. Manshack's children in an unrelated matter in the juvenile court, helped the family by paying $12,500 toward the repair work.

Ms. Manshack and Mr. Bailey ("Plaintiffs") filed suit in state court against ASI and Ocwen ("Defendants") for recovery of (unspecified) additional amounts under the insurance policy and to have Ocwen tender to Mr. Bailey the approximately $4,800 it received. The parties were of diverse citizenship, but Defendants did not remove the case after service of the original petition. Plaintiffs later filed an amended petition, after which Defendants did file a notice of removal. The result was Manshack v. Ocwen Loan Servicing, 13 CV 3231.

Plaintiffs filed a motion to remand and argued that the removal was untimely and the amount in controversy was not in excess of $75,000. The undersigned agreed with Plaintiffs on the amount in controversy argument and issued a ruling (Doc. 12) that granted remand, subject to a stay to allow for any appeal to the district judge. ASI filed an appeal (Doc. 14), which remains pending.

The day after the undersigned ruled on the motion to remand, Plaintiffs sent Defendants a demand letter that broke down the amounts claimed and stated Plaintiffs were willing to settle the case for $82,899.39. More than $30,700 of that amount was designated as judicial interest and court costs, which ordinarily are not included in the amount in controversy. Defendants nonetheless used the letter as the basis for a second notice of removal, which resulted in the opening of this civil action, <u>Manshack v. Ocwen Loan Servicing</u>, 14 CV 0759. Plaintiffs filed a Motion to Remand (Doc. 7) that is now before the court.

The cases have been consolidated because there is, in the end, only one lawsuit. This ruling, although directed at the most recent motion to remand, must nonetheless revisit some of the issues addressed in the earlier ruling. The court finds, after considering all available information, that the motion to remand must be granted.

**The Original Petition; Timeliness**

A notice of removal must be filed within 30 days after service of a copy of the initial pleading that sets forth a claim that is subject to removal. 28 U.S.C. § 1446(b). If the case stated by the initial pleading is not removable, a notice of removal may be filed within 30

days after service of an amended pleading or other paper from which it may first be ascertained the case is removable. Id.

Plaintiffs argued in their original motion to remand that the first notice of removal (filed in December 2013) was untimely because the original petition, served months earlier in June 2013, had triggered the removal period. Defendants responded that it was not clear from the initial petition that the case was removable, and it was only after the damages at issue were clarified in the amended petition that the removal period commenced.

The 30-day removal period is triggered by the initial pleading only when the pleading "affirmatively reveals on its face that the plaintiff is seeking damages in excess of the minimum jurisdictional amount of the federal court." Chapman v. Powermatic, Inc., 969 F.2d 160, 163 (5th Cir. 1992). This is true even if the defendant has subjective knowledge that the claims at issue exceed $75,000. Mumfrey v. CVS Pharmacy, Inc., 719 F.3d 392, 399 (5th Cir. 2013). This bright-line rule avoids encouraging defendants to remove cases prematurely for fear of accidently letting the 30-day window run when it is unclear that the initial pleading satisfies the amount in controversy. Id.

The original petition alleged that the ASI policy had a limit of $50,000, and the estimated loss from the fire was $32,616.88. The recoverable depreciation owed to Ms. Manshack was said to be $4,871.17. Plaintiffs allege that ASI issued a check for that depreciation and sent it to Ocwen, who then issued a check in that amount payable to Ms. Manshack and her former husband. The husband could not be located to obtain his endorsement, and that check became stale. The husband was eventually located, and Mr.

Bailey asked Ocwen to issue a new check for $4,871.17. Despite a number of conversations and correspondence on the issue, a new check was not issued.

Plaintiffs alleged in the original petition that Ocwen was liable for the amount of the depreciation check and related damages (interest) for its lack of timely payment. Plaintiffs alleged that ASI owed the "balance of the policy limit," but the petition never made clear how much, if any, ASI had paid under the policy beyond the depreciation amount. A letter attached to the petition as Exhibit A stated that, as of when it was written, there was approximately $17,000 held by the insurer to pay for repairs as they were completed. The petition also referred to a Statement of Loss Claim Recapitalization that might have some information on this. It is referenced as Exhibit D to the petition, but it appears the exhibit was omitted (at least from the copy filed in this court).

Plaintiffs also prayed for statutory penalties against ASI. They invoked La. R.S. 22:1892(B)(1), which provides that failure to make a payment within 30 days of receipt of satisfactory proof of loss, if found to be arbitrary, capricious, or without probable cause, shall subject the insurer to a penalty, in addition to the amount of the loss, of 50% damages on the amount found to be due from the insurer to the insured, or $1,000, whichever is greater. In the event a partial payment has been made, the penalty is 50% of the difference between the amount paid and the amount found to be due. The statute also provides for an award of reasonable attorney fees and costs.

Plaintiffs also invoked La. R.S. 22:1220(C), which subjects an insurer who fails to pay within 60 days after receipt of satisfactory proof of loss to a potential penalty "not to exceed

two times the damages sustained or five thousand dollars, whichever is greater." The petition did not suggest the amount of any such penalties or the damages or amounts upon which they should be calculated.

A person could make some educated guesses based on the information in the original petition and perhaps come up with a reasonable approximation of the amount it put at issue. But, to trigger the removal period, the original petition had to affirmatively reveal on its face that the Plaintiffs were seeking damages in excess of $75,000. Statutory penalties and attorney fees are included in determining the amount in controversy,[1] but the original petition simply did not reveal enough information about the amount claimed to be due under the policy or how to calculate any related penalties for a person to reasonably conclude that the pleading affirmatively revealed on its face any amount in controversy. The result is that the original petition did not trigger the removal period.

**Amended Petition; Amount in Controversy**

Plaintiffs filed in state court a first amended and restated petition. Defendants filed their first notice of removal within 30 days of service of the amended pleading, so there is

---

[1] St. Paul Reinsurance Co. v. Greenberg, 134 F.3d 1250, 1253 (5th Cir. 1998) (including "penalties, statutory damages, and punitive damages—just not interest or costs."); Foret v. S. Farm Bureau Life Ins. Co., 918 F.2d 534, 537 (5th Cir. 1990) (attorney's fees are a part of the matter in controversy when they are provided for by contract or by state statute)

no timeliness dispute in that regard. As for the amount in controversy, Defendants have the burden of establishing by a preponderance of the evidence that it exceeds $75,000 exclusive of interest and costs. Defendants may meet their burden by: (1) demonstrating that it is "facially apparent" that the claims are likely above $75,000, or (2) setting forth the facts in controversy—in the notice of removal or an affidavit—that support a finding of the requisite amount. Luckett v. Delta Airlines, 171 F.3d 295, 298 (5th Cir. 1999); Simon v. Wal-Mart Stores, Inc., 193 F.3d 848 (5th Cir. 1999).

Defendants attempted to meet their burden by pointing to revisions in the amended petition. For example, Plaintiffs modified the allegation in paragraph 14 from an allegation that the amount of the losses from the fire were $32,616.88 to a direct assertion that "Defendants owe $32,616.88 plus penalties, attorneys' fees and judicial interest from March 29, 2004." The petition again invoked the penalty statutes and, after discussing the penalty provisions of Section 1892, alleged: "This means $41,618.57, plus attorneys' fees and judicial interest from March 29, 2004, when the money became due and owed to Plaintiffs." ¶ 18. Plaintiffs allege that ASI and Ocwen were co-conspirators and joint tortfeasors so that they were both liable, in solido, for all amounts owed, including penalty provisions. ¶ 53.

Defendants did not offer any facts in an affidavit or otherwise; they relied only on the amended petition to shoulder their burden. The focus of their amount in controversy argument was a calculation of the potential penalties and fees at stake. They began with the alleged remaining balance due under the ASI policy (after deduction of the depreciation payment that is still at issue) at $27,745.71. Section 1892 allows a penalty of up to 50%

damages on the amount found to be due from the insurer. That could produce an amount due and a penalty total of $41,618.57 (the same number alleged in the amended petition) plus attorney fees.

Mr. Bailey offered an affidavit in connection with the remand dispute in an effort to clarify the amounts at issue. A mere post-removal stipulation that the damages do not exceed $75,000 does not defeat jurisdiction, but a post-removal affidavit may be considered if it contains *facts* that clarify an uncertainty about the amount in controversy at the time of removal. Gebbia v. Wal-Mart, 233 F.3d 880, 883 (5th Cir. 2000). Mr. Bailey's affidavit included rather conclusory assertions that (1) the amount in controversy, including all fees and penalties, does not meet the jurisdictional amount and (2) Plaintiffs would not accept compensation for any damages that exceeds $75,000, exclusive of judicial interest and costs. The only fact he provided that could help clarify the amount at issue was a statement that Plaintiffs, in their amended petition, "seek damages in the amount of $41,618.57, including penalties, but exclusive of attorneys' fees, judicial interest, and costs."

Defendants argued that the amount of penalties calculated by Plaintiffs did not take into account the possibility of a larger penalty under Section 1973. Louisiana law allows a bad faith claimant to recover attorney fees under Section 1892 plus the maximum penalty available under either Section 1892 or Section 1973. Calogero v. Safeway Ins. Co. of La., 753 So.2d 170 (2000). Section 1973 imposes a duty on an insurer to adjust claims fairly and promptly make a reasonable effort to settle claims with an insured. An insurer who breaches those duties "shall be liable for any damages sustained as a result of the breach." Subsection

C provides: "In addition to any general or special damages to which a claimant is entitled for breach of the imposed duty, the claimant may be awarded penalties assessed against the insurer in an amount not to exceed two times the damages sustained or five thousand dollars, whichever is greater."

The available penalties under Section 1973 are based on the consequential damages sustained as a result of a breach of duties under the statute; the penalties are not calculated by doubling the amounts due under the insurance policy. Durio v. Horace Mann Ins. Co., 74 So.3d 1159 (La.2011) (interpreting Section 1220 before it was renumbered Section 1973). Neither the facts set forth in the amended petition nor any provided by Defendants suggest a factual basis for an award of mental anguish or other consequential damages caused by the alleged breach. In similar settings, federal courts have concluded that the $5,000 minimum penalty is the highest amount the court can attribute to the claim for penalties when assessing the amount in controversy. See Wheeler v. Farmers Ins. Exch., 2013 WL 4432097 (W.D. La. 2013) aff'd, 2014 WL 280356 (W.D. La. 2014); Washington v. Liberty Mutual Fire Ins. Co., 2012 WL 3096046, *3 (W.D. La. 2012); Gelvin v. State Farm Mut. Auto. Ins. Co., 2012 WL 1354855 (E.D. La. 2012). Under that approach, Section 1892 would yield the greater penalty and make the damages/penalty figure the one suggested by Mr. Bailey.

Defendants argue that consequential damages under Section 1973 include legal interest on the amounts that should have been paid earlier. They calculate that Louisiana legal interest (damages) on $27,745.71 from March 29, 2004 (date of the fire) through removal of the case on December 12, 2013 would be $15,823.24. They add to that the

maximum double-damages penalty of $31,646.48. When the principal claim of $27,745.71 is added to the base interest/damages and the double-damages penalty, the total is $75,215.43 (plus statutory attorney fees.)

Defendants, in support of their "interest equals statutory damages" argument, cite a sentence from Pride v. American Sec. Ins. Co., 2003 WL 1618566, *2 (E.D. La. 2003). The Pride decision, immediately after discussing how the penalty statute requires proof of actual damages, stated: "Typically, the loss to the insured is made up of the amount of interest the insured would have earned on amounts it was forced to expend due to the insurer's delay in paying the claim." It appears that Pride was not suggesting in that sentence that interest on the unpaid amount constituted damages on which a penalty could be calculated. Rather, the court offered the collection of interest as a contrast to a penalty situation where there are actual damages. In the typical case where there are no actual damages, interest is the form of compensation to the claimant for the delay in payment.

The plaintiff in Pride alleged consequential damages due to being "forced to accept repairs or replacements of lesser quality." The court considered only the alternate $5,000 penalty for purposes of the amount in controversy. It specifically recognized: "In the absence of proof of the amount of consequential damages resulting from a violation of 22:1220, courts impose the alternate $5,000 penalty." Id. at *2. Defendants do not point to a case which has assessed a penalty based on the "interest equals statutory damages" method that they propose.

The Fifth Circuit has recognized that Section 1973 (formerly 1220) requires proof of actual damages arising from the breach to allow a penalty. Matter of Hannover Corp. of Am., 67 F.3d 70, 76 (5th Cir. 1995). The Court's survey of Louisiana cases reflected that "the double-damages provision applies only after a showing of damages arising from the breach." Id. "However, if no damages are proven the claimant can still be awarded the maximum $5,000 penalty." Id. The Fifth Circuit made no suggestion that, even in the absence of actual damages, interest on the unpaid $45,000 claim could be used as the basis for a double-damages penalty. Thus, the larger penalty available to Plaintiffs is under Section 1892, and the maximum amount at stake (based on the information in the amended petition) is $41,618.57 plus attorney fees.

The court may include an estimated reasonable attorney fee award when assessing the amount in controversy in a case where statutory or contractual fees may be awarded. Coburn v. Int'l Paper Co., 2013 WL 4776481,*2 (W.D. La. 2013); Wright Family Investments v. Jordan Carriers, 2012 WL 2457664 (W.D. La. 2012). To exceed the sum of $75,000, the court would have to award Plaintiffs an attorney fee in excess of $33,380. The undersigned, in ruling on the original motion to remand, found that such an award was possible but not more likely than not, so Defendants had not met their burden of showing by a preponderance that the amount in controversy exceeds $75,000.[2]

---

[2] That the amount in controversy "may," "might," or "could well" exceed $75,000 is insufficient to satisfy the burden of presenting facts that show it is more likely than not that the requisite amount is in controversy. Allen v. R & H Oil & Gas Co., 63 F.3d 1326, 1336 (5th Cir. 1995).

**Demand Letter; Second Notice of Removal**

    **A. Effect of Second Notice of Removal**

The day after the undersigned ruled on the first motion to remand, Plaintiffs (apparently by coincidence) sent a demand letter to ASI and Ocwen. The letter detailed the payments that had been made under the policy and the amount that Plaintiffs considered to be due. The letter reflected that Plaintiffs had learned through discovery that the amount remaining due under the policy was only $17,532.74. That amount was based on payments ASI made before suit was filed. There is no record evidence to contest that this new and lower figure is the amount allegedly due under the policy at the time suit was filed and when the case was removed. Plaintiffs proposed to resolve the case in exchange for payment of the following amounts:

| | | |
|---|---|---:|
| 1. | All outstanding funds | $17,532.74 |
| 2. | Penalties, pursuant to La. R.S. 22:1973(C) | $ 5,000.00 |
| 3. | Penalties, pursuant to La. R.S. 22:1892(B)(1) | $ 8,766.37 |
| 4. | Attorney's Fees | $20,866.07 |
| 5. | Court Costs | $   515.90 |
| 6. | Judicial Interest (as of 3/4/2014) | $30,218.31 |
| | Total | $82,899.39 |

Defendants seized upon the letter as the basis for a second notice of removal, which gave rise to 14 CV 0759 and the second motion to remand that is now before the court.

The parties argue over whether a second removal is permitted in these circumstances. Defendants are correct that a party may file a second removal based on diversity jurisdiction if, after a remand, different facts came to light to support another removal. SWS Erectors,

Inc. v. Infax, Inc., 72 F.3d 489, 492-93 (5th Cir. 1996) (second removal permitted based on deposition transcript that included testimony about damages above the jurisdictional amount). However, this case was never remanded and has remained in federal court since its initial removal. The undersigned issued a ruling to grant the first motion to remand but stayed the order until any appeal to the district judge was completed. The second notice of removal could not, therefore, remove the case; it was already here. The second notice of removal is more properly viewed as an amendment to the original notice of removal. The amendment and the accompanying demand letter serve as additional evidence to help clarify the originally ambiguous amount in dispute.

Plaintiffs listed in their settlement demand an amount for a penalty under each statute, but it was explained above that they may collect only the larger of the two potential penalties. With only $5,000 available under Section 1973, Section 1892 would produce the greater penalty of $8,766.37 (50% damages on the amount due). That would bring Plaintiffs' total potential damages and penalty to $26,299.11. A reasonable attorney fee award must also be weighed, but Defendants cannot show that it is more likely than not that such an award would exceed the $48,700.89 necessary to get them to $75,000. Such an award is possible, but it is very unlikely in such a small case.

**B. Legal Interest Claim**

Section 1332 states that diversity jurisdiction may exist when the matter in controversy exceeds the sum or value of $75,000, "exclusive of interest and costs." Despite the language of the statute, Defendants argue that the more than $30,000 of legal interest

claimed in the demand letter should be considered in determining the amount in controversy.

"[I]nterest uniformly is excluded ... if it is only incidental to the claim the plaintiff is asserting or if it arises solely by virtue of a delay in the payment of an obligation. Interest is not excluded, however, if it is itself the basis of the suit and part of the obligation." Wright and Miller, 14AA Fed. Prac. & Proc. Juris. § 3712, Interest and Costs (4th ed.) "The cases make it clear that the jurisdiction statutes require exclusion not only of interest that accrues after the action is brought but also interest that has accrued prior to the filing of the complaint." Id.

Defendants argue that the interest claimed by Plaintiffs must be included in assessing the amount in controversy because it is akin to a penalty. Defendants rely primarily upon three cases. Each is easily distinguished. In Buras v. Birmingham Fire Ins. Co. of Pa., 327 F.2d 238 (5th Cir. 1964), a Louisiana insurance penalty statute imposed a 6% interest penalty (rather than the ordinary 5% legal interest rate) if an insurance claim was arbitrarily not settled within 60 days. The Court found the exaction to be "in the nature of a coercive penalty" so did include it in the amount in controversy. Similarly, in St. Paul Reinsurance Co. v. Greenberg, 134 F.3rd 1250 (5th Cir. 1998) the Fifth Circuit addressed Article 21.55 of the Texas Insurance Code which provided for statutory "damages" in the amount of "18 percent per annum" for failure timely to pay an insurance claim. The amount, referred to by Texas courts as a penalty, was included in the amount in controversy. The Court explained: "Despite being described in terms of a per annum percentage for purposes of calculation, the

statutory exaction here is not 'interest' within the contemplation of § 1332; it clearly is an element of damages." Id. at 1255. Finally, Roberts v. Chandaleur Homes, Inc., 237 F. Supp. 2d 696, 697 (S.D. Miss. 2002), presented a claim to rescind a financing agreement that called for the payment of interest. The interest that would have to be paid if the financing agreement were upheld was included in determining the amount in controversy.

Plaintiffs have alleged since their original petition that they are entitled to legal interest for the delay in payment. They rely on La. Civ. Code art. 2000, which provides that damages for delay in performance are measured by the interest on the sum due at the rate agreed by the parties or, in the absence of agreement, at the rate of legal interest as fixed by La. R.S. 9:3500. Plaintiffs' interest claim is not based on a statutory penalty provision such as those in Buras and Greenberg that applied a coercive penalty to prompt reasonable settlement of insurance claims. And Plaintiffs do not seek interest based on any contractual provision in the insurance policy or other agreement, as was the issue in Roberts. Rather, Plaintiffs have asserted entitlement to recover legal interest under generally applicable state law. The interest claimed is no more a "penalty" here than it is in every breach of contract suit filed in state court.

"For purposes of calculating the jurisdictional amount, a federal court may not look to any amount claimed as interest by the plaintiff that is attributable solely to a delay in payment or to a wrongful deprivation of funds." Moore's Federal Practice, § 102.106[5][b] (3d ed. 2014). That is exactly what Defendants ask the court to do. Their request must be denied. The court has taken into consideration the maximum potential statutory penalty,

which is included in the amount in controversy, but the demand for legal interest based solely on delay in payment is not part of the calculation.

**Conclusion**

The **Motion to Remand (Doc. 7)** in 14 CV 0759 is **granted** on the grounds that the court lacks subject matter jurisdiction. This order is **stayed** until such time as the appeal from the prior ruling in 13 CV 3231 and any appeal from this ruling have been decided by the district judge.

THUS DONE AND SIGNED in Shreveport, Louisiana, this 29th day of October, 2014.

Mark L. Hornsby
U.S. Magistrate Judge